New trial granted.

[FOURTH DEPARTMENT, GENERAL TERM, at Rochester, September 10, 1872. *Mullin, Talcott* and *E. D. Smith,* Justices.]

## OSCAR H. GREEN *vs.* JACOB EDICK, survivor, &c.

The conversion, by one tenant in common, of the whole property to his own use, or the sale or destruction thereof, in defiance and denial of the rights of his co-tenant, is such a conversion as will sustain an action in the nature of trover.

A referee found that the plaintiff and the defendant and his partner purchased a quantity of skins together, with money borrowed on their joint credit, upon notes discounted at the bank, and upon an agreement that each was to pay one-half the amount of such notes, and each was to have one-half of the skins; that the defendant and his partner were to take the skins, and were to be paid by the plaintiff fifteen cents per pound for tanning his half; and that each took, and drew one-half of the skins to the defendant's tannery; so that there was, in fact, upon the purchase, a several delivery of one-half the number of skins to each party.   And the referee found, in effect, that the parties were tenants in common of the skins and leather.

*Held,* 1. That the plaintiff having failed to make payment of his part of the bank notes, at maturity, and the defendant and his partner having paid and taken up said notes, with their own funds, with his assent, the plaintiff's interest in the skins was properly held by the defendant's firm as a security for their advance for the plaintiff towards the purchase thereof, as well as for the expense and labor in tanning the same.

2. That having thus the lawful possession of the skins, and having by their labor

Green *v.* Edick.

and services in tanning the same fitted them for market, the defendant's firm had a clear right to sell the same for their reimbursement for the moneys invested and advanced, and for the labor by them bestowed upon said skins. And that a sale thereof in the market, by the defendant's firm, was in accordance with the understanding of the parties and the assent of the plaintiff.

3. That such sale was not, of itself, a conversion of the skins and leather. But that the refusal of the defendant's firm, upon the demand of the plaintiff, after such sale, to account to him for the same or his share thereof, and their denial of his interest therein, and their refusal to recognize any rights on his part, in respect to such skins and leather or the proceeds thereof, together with their exclusive appropriation of the whole of such proceeds to their own use, was a clear conversion, on their part, of the plaintiff's share or interest in said skins and leather, and entitled the plaintiff to maintain an action therefor ; and the refusal of the referee to nonsuit him was right.

The rule of damages, in such an action.

APPEAL, by the defendant (who was sued as survivor of the firm of Jacob Edick & Son,) from a judgment entered upon the report of a referee.

*By the Court*, E. DARWIN SMITH, J. The referee has in effect found that the plaintiff and the defendant and his deceased partner are tenants in common of the skins and leather in controversy in this suit. He finds that they purchased the skins together, with money borrowed upon their joint credit, upon notes discounted at bank, and upon an agreement that each was to pay half the amount of such notes, and each was to have half the skins ; that the defendant and his partner were to take the skins, and were to be paid by the plaintiff fifteen cents per pound for tanning his half ; and that each took and drew one-half of the skins to the defendants' tannery ; so that there was, in fact, upon the purchase, a several delivery of one half the number of the skins to each party. Upon this finding it is clear that if the plaintiff had paid his half of said note, at maturity, or, at any time before the said skins had been sold by the defendants, had paid or tendered to the defendant his proportion of the purchase money paid for said skins and fifteen cents per pound for tanning the same, he

would have been entitled to a delivery of one-half in the number or weight of said skins tanned and ready for use or sale at the defendants' tannery.

The plaintiff having failed to make payment of his part of the said promissory notes at their maturity, and the defendant and his partner having taken up and paid said notes with their own funds, with his assent, the plaintiff's interest in said skins was properly held by the defendant's firm as a security for their advance for the plaintiff towards the purchase thereof, as well as for the expense and labor in tanning the same. Having thus the lawful possession of the said skins, and having by their labor and services in tanning the same fitted them for market, the defendant's firm, I think, had a clear right to sell the same for their reimbursement for the moneys thus invested and advanced, and for the labor by them bestowed upon said skins.

It is apparent, I think, from the facts found by the referee and the conduct and acts of the parties disclosed in the evidence, that these skins were purchased and tanned upon the joint venture of the parties and in expectation to sell the same as soon as they were ready for the market, for their common benefit; and that the sale by the defendant's firm of the said skins after they were so prepared for market, in the city of Boston, was in accordance with the understanding of the parties and the assent of the plaintiff.

The sale of said skins as made by Edick & Son, as found by the referee, was not of itself a conversion of the same. But the refusal of said Edick & Son upon the demand of the plaintiff, after the sale of said skins, to account to him for the same or his share thereof, and their denial of his interest therein, and their refusal to recognize any rights on his part to the said skins or the proceeds thereof, and their exclusive appropriation of the whole proceeds of such skins to their own use, was a clear conversion, on their part, of the plaintiff's share

Green *v.* Edick.

or interest in said skins as found by the referee, and entitled the plaintiff to maintain this action. The refusal of the referee to nonsuit the plaintiff was right, and the defendant's exception thereto not well taken. The conversion by one tenant in common of the whole property to his own use, or the sale or destruction thereof, in defiance and denial of the rights of his co-tenant, is such a conversion as will sustain an action in the nature of trover. (*Tanner* v. *Hills*, 44 *Barb.* 428. *Dinehart* v. *Wilson*, 15 *id.* 595. *Lobdell* v. *Stowell*, 37 *How.* 88. *Nowlen* v. *Colt*, 6 *Hill*, 461.)

The only question remaining arises upon the question of damages. The referee finds that the skins were sold, and the proceeds appropriated by Edick & Son between the 7th of January and the 2d day of April, 1869, and that the average weight of the entire lot of 2,440 of such skins thus sold was $2\frac{1}{2}$ pounds per skin, and the fair market value thereof 85 cents per pound. The whole proceeds of such skins, at this valuation, he charges to the defendant, being $4,760, from which he deducts the amount of the two notes paid by Edick & Son, and interest, allows the defendant fifteen cents per pound on one-half the skins, for tanning the same, $429, making the whole amount of the deductions $3,877.20 and leaving the net profit upon the said skins, $882.89, with which he held the defendant chargeable ; one-half of which amount he held belonged to the plaintiff, with interest from March 1, 1869.

In this process of ascertaining the net profit upon the skins the referee clearly erred in charging the defendant with the entire proceeds of such skins, which included of course their value as leather after they had been tanned by the defendant, and included the whole expense, service and labor in tanning the same, and deducting from such account only one-half of the amount of the cost of such tanning, assuming that fifteen cents a pound was the fair cost or compensation for such tanning for the

entire quantity. The further sum of $429 should have been deducted for tanning the defendant's·half of such skins. Otherwise the referee's finding in respect to the amount of the plaintiff's interest in the skins was correct upon the assumption or ground upon which it was put by the referee. The $100 paid by the plaintiff to Edick & Son was properly included in the· plaintiff's damages. It was so much paid by him to Edick & Son and received by them to apply upon the fifteen cents per pound for the tanning of his half of said skins.

The defendant's counsel insists that the referee also erred in his assessment of damages, in disallowing ·all claims for freight and commissions on sales. The valuation fixed upon the skins was doubtless based upon the testimony of the witness Sanders, who testified that he had sold 500 skins of the same class and description in the Boston market at from 83 to 85 cents per pound. The defendant was charged with the value of the skins in the Boston market, and nothing was allowed him by the referee by way of deduction from the amount of such valuation for transportation of the skins to Boston, or for expenses and commissions upon sales there. This· would be clear error if there was any sufficient and satisfactory evidence in the case of the amounts so paid by the defendant's firm for freight and commissions.

The only evidence I have found on the subject and referred to in the points of the counsel for the defendant, is contained in four exhibits annexed to the case numbered 3, 4,. 5 and 6, purporting to be account of sales from three different houses in Boston of calf-skins and other leather on account of Edick & Son, in the winter of 1869. The referee has obviously considered and impliedly held that these bills or accounts of sales did not contain any reliable evidence of the amount paid by the defendant for freight and commissions on the sales of such leather.

The question is whether he clearly erred on this point

Green *v*. Edick.

and his finding is against the clear weight of the evidence. The fact how much, if anything, was paid by the defendant's firm for freight and commissions was for the defendant to establish. He was bound to make clear and satisfactory proof of such amount. He was himself a witness, and knew the facts, and could easily have shown by his own and other clear proof the net proceeds of the sale of said leather and the amount actually received by his firm from the sale thereof, and the amount actually allowed and paid for freight and commissions. He was sworn as a witness, and testified that "he took the skins from the tannery after they had been prepared for market, and addressed and shipped them to Boston as addressed;" but he did not testify that the skins, or any part of them, were shipped or sent to either of the houses or firms named in said bills or in either of said accounts of sales. The bills or accounts of sales were no evidence, of themselves, as against the plaintiff. They were the acts of third persons, and were not verified as correct by any person knowing the facts. They did not contain any certain description of the property sold, and there is and was no certainty as exhibited by said bills that the calf-skins purporting to be sold by the parties making such account of sales were those in which the plaintiff was interested. The said firm of Edick & Son had other skins tanned that year and sold in the Boston market. The proof was in the hands of the defendant, and it was clearly competent for him to follow and identify the skins in question, and show who sold them, and for what they sold, and what expenses and commissions were actually paid thereupon. He failed to make such proof to the satisfaction of the referee, and we cannot see that he committed a clear error in holding, in effect, that no account of charges for freight and commission was satisfactorily proved.

The referee found that the net profits upon said skins

The People v. Oliver.

was $882.89. Deducting from this amount the sum of $429 for one-half the expense of tanning said skins, being for the defendant's part thereof, and it leaves the net profits $453.89, one-half of which sum $226.94 was the plaintiff's share of such profits, instead of $441.40 found by the referee. The difference, which is $214.46 with interest from March 1, 1869, should be deducted from said judgment. On the plaintiff giving a stipulation to reduce the judgment accordingly, the same should be affirmed; otherwise it should be reversed, and a new trial granted.

Judgment accordingly.

[FOURTH DEPARTMENT, GENERAL TERM, at Rochester, April 1, 1873. *Mullin, Talcott* and *E. D. Smith,* Justices.]